McKay v. Millner.

4-7480                  183 S. W. 2d 780

Opinion delivered December 4, 1944.

*Claude F. Cooper,* for appellant.

*H. R. Partlow,* for appellee.

SMITH, J. Appellee filed in the municipal court of the city of Blytheville, an affidavit averring the following facts: That the defendant, Dan Ashcraft, was indebted to him in the sum of $39.02, for work and labor done on 1,066 feet of piling; that said piling was made for the defendant Ashcraft under a contract with Roy McKay who sold the piling to one Hughes. Ashcraft, McKay and Hughes were all made defendants, and it was prayed that plaintiff have judgment against said defendants for $39.02, and that he have an attachment against the piling, the product of his labor, to enforce his lien as a laborer.

An attachment was issued as prayed, commanding that the piling be seized, and that the defendants be required to answer plaintiff's claim. It does not appear that the attachment was ever served, and the judgment rendered in municipal court contains no reference to it. A controverting affidavit was filed by McKay which denied any indebtedness to plaintiff, or that plaintiff was entitled to a lien on the piling. The judgment rendered in the municipal court recites merely that upon a trial, judgment was awarded in favor of the plaintiff for the amount sued for, against McKay and that appeal was prayed and granted. Upon the trial of this appeal in the circuit court, judgment was again rendered against McKay in favor of plaintiff for $39.02, and from that judgment is this appeal.

Testimony was offered at the trial in the circuit court sufficient to sustain plaintiff's claim for a laborer's lien on the piling, had it been seized under the attachment, but the sale of the piling to Hughes by McKay had apparently defeated that relief.

Much of the testimony offered at the trial from which is this appeal, by the plaintiff, was objected to upon the ground that it sought to establish a different cause of action from that sued upon. The theory upon

which the cause was submitted to the jury is reflected by the following instructions given over the objection of McKay:

"Gentlemen of the jury, in this case the plaintiff, Jesse L. Millner, sues to recover the sum of $39.02 which he claims is due him for making certain piling for one Dan Ashcraft."

No objection was made by plaintiff to this statement of the case.

Another instruction given over McKay's objection reads as follows: "If you find from the evidence in this case that after the piling was made that the defendant McKay did agree with the plaintiff Millner to make payment for same to him after said piling had been inspected and the amount due ascertained, then you will return a verdict for the plaintiff. Otherwise, your verdict will be for the defendant."

It will be observed that this instruction is predicated upon the hypothesis that McKay agreed, after the piling was made, to pay for the labor and it was not therefore an original promise in consideration of which labor was performed.

Plaintiff testified that he had been employed by Ashcraft to get out, or make, the piling, some to be paid for at 3 cents per 1,000 feet, other at 4 cents per 1,000 feet, and that he was to be paid when McKay inspected the piling; that Ashcraft gave him one order on McKay, but he was given no order for the labor for which he had not been paid. Plaintiff testified that McKay told him he would pay an order from Ashcraft to anyone, and that he presented one such order and it was paid. Plaintiff's testimony is somewhat equivocal, and he was asked by the court: "Did I understand you to say that you went to Mr. McKay and that he agreed to pay you, to hold your money and pay it to you directly?" and the answer: "That is what I asked of him and he didn't refuse, but just his answer I don't remember just what it was." This conversation occurred after the labor had been per-

formed and when given its highest probative value amounts to nothing more than a promise on McKay's part to pay plaintiff what Ashcraft owed him. The plaintiff had previously testified when asked "Did you have any conversation with Mr. McKay about the pay?" he answered, "Yes, sir, I saw him and told him to keep my money, and also told Dan, and told him to leave it with Roy (McKay)." This language is susceptible to no construction other than that McKay had agreed to pay not what he owed plaintiff, but what Ashcraft owed plaintiff.

McKay requested the court to charge the jury that such a promise, if made, was in effect an undertaking to pay the debt of another, and was therefore within the statute of frauds, and not being in writing could not be enforced. This instruction should have been given and for the error in refusing to give it, the judgment must be reversed.

The testimony appears to establish the fact that McKay, by selling the piling to Hughes, had converted property upon and against which plaintiff was entitled to enforce a laborer's lien. But even so, he cannot hold McKay liable in this action for so doing. Such is the effect of our holding in the following cases: *Barrett* v. *Nichols*, 85 Ark. 58, 107 S. W. 171; *Reavis* v. *Barnes,* 36 Ark. 575; *Judge* v. *Curtis,* 72 Ark. 132, 78 S. W. 746. In the first of these cases, the headnote reads as follows:

"A demurrer should be sustained to a complaint in an action at law begun in the common pleas court which states a cause of action that is cognizable in equity only, as where it alleges that defendant disposed of cotton upon which plaintiff held a laborer's lien."

If plaintiff elects to proceed further at law, he must show an agreement in writing on McKay's part to pay the debt due plaintiff by Ashcraft. Par. 2, § 6059, Pope's Digest.

If plaintiff elects to sue for the conversion of property on which he had a lien, he must sue in equity, the only court having jurisdiction to grant that relief.

The judgment is, therefore, reversed and the cause remanded for further proceedings, if plaintiff so elects.